# Illinois Official Reports

## Appellate Court

---

### *People v. Parrott*, 2017 IL App (3d) 150545

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDALL W. PARROTT, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0545 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | August 17, 2017<br><br>October 5, 2017<br>October 5, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Mercer County, No. 14-CM-129; the Hon. Richard A. Zimmer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Meeghan N. Lee, State's Attorney, of Aledo (Patrick Delfino, Lawrence M. Bauer, and Jasmine Morton, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justice Lytton concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant, Randall W. Parrott, appeals his conviction for domestic battery, arguing that (1) the State failed to disprove his affirmative defense and (2) he was denied his right to confront his accuser. We affirm.

¶ 2                                    FACTS

¶ 3    Defendant was charged with four counts of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2014)). The counts alleged that defendant knowingly made physical contact of an insulting nature with E.S., R.V., G.V., and L.S.

¶ 4    The case proceeded to a bench trial. Defendant raised the affirmative defense of reasonable parental discipline. The State moved for admittance of hearsay statements under section 115-10 of the Code of Criminal Procedure of 1963 (Code). 725 ILCS 5/115-10 (West 2014). Defendant's attorney stated, "It specifically states domestic battery [against a child under the age of] 13. *** [I]f they testify, it appears that the out-of-court statement can come in as well." The court asked defense counsel if he was contesting the hearsay evidence. Defense counsel responded, "Subject to them testifying, no." The State said, "[T]he children will be here to testify."

¶ 5    Kathy Olsen testified that she was the principal at Mercer County Intermediate School. In September 2014, R.V. was 10 years old and got in trouble for throwing paper out of the window of the school bus. Olsen approached R.V. in his classroom and spoke with him outside the classroom door. Olsen gave R.V. a disciplinary card and told him he needed to have it signed by his parents. R.V. took the card and went back into the classroom. Olsen later got a call from R.V.'s teacher telling her that R.V. was crawling under desks and crying. Olsen took R.V. to her office. R.V. was "distraught" and asked her not to call his parents. Olsen stated:

> "I basically just said, you know, this is customary, this is what we need to do, and why are you so opposed to me calling home? And at that point he started to tell that, you know, he gets beat with a belt at home and that he would get in big trouble. And then from there it proceeded to other things such as being denied food. He had missed the previous day, so then he recounted what had happened the previous day as far as several of the boys getting whipped because of the dispute with eating a Subway sandwich or something that was supposedly [defendant's]."

R.V. told Olsen that L.S. and E.S. were hit with the belt six or seven times. Olsen reported the incident to the Department of Children and Family Services (DCFS).

¶ 6    Deputy Brian Evans testified that he was a patrol officer with the Mercer County sheriff's department. He received a call from DCFS investigator Penny Blaser about possible child abuse. Evans accompanied Blaser to meet with defendant. Defendant discussed his discipline of the children with Evans and Blaser. Evans stated: "[Defendant said] that he grounds them,

- 2 -

he stand them in the corner, and he makes them do the 'dead cockroach' is how he explained it. And then when [Blaser] said that the children *** told her that [defendant] had whipped them the night before, he said I used to whip them with a belt, I no longer do that."

¶ 7 Evans then checked the children for injuries. E.S. was six years old and had two red welts about 2½ inches long on the upper portion of the back of his legs. Evans said it was "about the width of a belt in [his] opinion." Blaser took photos of the injuries, which were admitted into evidence. E.S. told Evans that he had been whipped with a belt the night before "for eating a biscuit."

¶ 8 Evans examined G.V., who was four years old, but did not notice any welts on her. R.V. told Evans he had been whipped with a belt the night before. L.S., who was eight years old, also told Evans he had been whipped with a belt the night before. R.V. retrieved the belt used for the whipping.

¶ 9 Blaser testified that she went to the school to meet with Olsen and interview R.V. R.V. told Blaser, "that everybody gets spanked at their house, everybody gets it with a belt, that he was scared to go home. *** [E.S.] got it the night before with the belt because he ate [defendant's] biscuit and he blamed it on [L.S.], so [defendant] took the belt to [E.S.]" Blaser interviewed all the children together, and they all said they get hit with a belt when they get in trouble. E.S. said "he had gotten hit the night before because he ate [defendant's] biscuit."

¶ 10 E.S. testified that defendant never hit him or his siblings with a belt. Defendant did not cross-examine E.S.

¶ 11 The court granted defendant's motion for directed verdict with regard to count III, regarding G.V.

¶ 12 Defendant did not present any evidence.

¶ 13 The court found defendant not guilty of counts II and IV, regarding, R.V. and L.S. However, the court found defendant guilty of count I. Specifically, the court stated:

> "With respect to Count 1 [E.S.], the statements attributed to the minor are much more specific in the Court's mind than on the other incidents. The Court found the deputy very credible in his testimony as far as what he did, what he saw and what he was told. And I believe he was told by the minor what he says he was told. He seemed very straight forward and forthright in his testimony. Everything about the minor in that seems consistent up until the testimony of the minor today. But we have a picture here and as I sit here today, I'm unaware of any law that says if a witness denies something at trial, that that in and of itself results in a not guilty. Maybe there's some law out there that says that, but I'm unaware of.
>
> But I think based upon the consistency of the statements I heard, particular the deputy's testimony about what he was told, and the pictures, which appear consistent with that, I do think the State's met their burden on Count 1 and the Defendant is found guilty of Count 1 as it relates to [E.S.]"

Defense counsel asked the court for clarification regarding its finding on the affirmative defense and whether it was reasonable discipline. The court said, "Given the nature of the discipline, nature of the alleged infraction, not reasonable. I see marks. *** And I would go with [the State's] argument and I'm somewhat accepting his statement. *** This was a whipping with a belt."

¶ 14    On June 30, 2015, defendant was sentenced to 12 months' probation and 60 days' jail time, with 8 days already served and the rest stayed pending compliance. On July 28, 2015, 28 days after he was sentenced, defendant appeared in court and stated he wanted to appeal. The record does not contain a report of proceedings for that day, but the docket sheet states, "Def by PD Dalton. State by ASA Lee. [C]ause on as walk-in. PD Dalton reports the Def wishes to appeal. Granted. Court orders: Clerk to file an appeal. Appellate Public Defender to be appointed." However, the notice of appeal was not actually filed until July 31, 2015, one day past the 30-day filing deadline. No motion for leave to file late notice of appeal was filed within the six-month time period.

¶ 15                                    ANALYSIS

¶ 16    On appeal, defendant argues that (1) he was not proved guilty beyond a reasonable doubt as the State failed to disprove the affirmative defense of reasonable parental discipline of E.S. and (2) he was denied his sixth amendment right to confront his accuser where E.S. testified that defendant never hit him, but the court found him guilty based on E.S.'s previous hearsay statements. The State argues that we do not have jurisdiction to consider this case. Beginning with a consideration of our jurisdiction, we examine each of the arguments in turn.

¶ 17                                 I. Jurisdiction

¶ 18    At the outset, the State challenges our jurisdiction to consider this case as the notice of appeal was filed by the clerk one day late. As the notice of appeal was late, the State argues defendant needed to have filed a motion for leave to file late notice of appeal for us to have jurisdiction. Defendant argues that we have jurisdiction because the late filing of the notice of appeal was the clerk's fault, not defendant's. Defendant notes that he told the court he wanted to appeal 28 days after he was sentenced, 2 days before the deadline to file a notice of appeal in his case. That same day, the court ordered the clerk to file a notice of appeal, but the clerk did not do so until one day after the filing deadline, 31 days after defendant was sentenced. Both parties cite *People v. Sanders*, 40 Ill. 2d 458 (1968), in support of their positions. Because we find that defendant asked to appeal within the time frame and the clerk failed to file the notice of appeal on time, we find that we have jurisdiction to consider the case.

¶ 19    In *Sanders*, the defendant, within 30 days of sentencing, asked the circuit court if he could appeal his case and asked for a transcript. *Id.* at 459-60. The record did not show that the court responded to these requests, and no action was taken regarding defendant's appeal. *Id.* at 460. The defendant then filed a motion for leave to file late notice of appeal, which was denied by the appellate court. *Id.* at 459. Our supreme court found that the appellate court should have granted defendant's motion for leave to file late notice of appeal. *Id.* at 462-63. In doing so, the court stated:

> "It is our opinion that under the circumstances here present the defendant had in open court indicated his desire to appeal his conviction and that it was, therefore, the duty of the trial court clerk to prepare and file the proper notice of appeal. Supreme Court Rule 606(c) provides that, upon a showing of reasonable excuse for failure to file a notice of appeal on time, a defendant may request late leave to appeal within six months of the expiration of the time for filing a notice of appeal. We hold that the failure of the trial court clerk to prepare and file defendant's notice of appeal provided reasonable excuse for the defendant's failure to file his own notice of appeal on time

and that, therefore, the appellate court erred in dismissing defendant's motion requesting leave to file a late appeal." *Id.* at 462.

¶ 20　We acknowledge that *Sanders* is factually distinguishable in that the defendant in that case filed a motion for leave to file late notice of appeal, the denial of which was the subject of the court's review, and in the instant case, defendant did not file a motion for leave to file late notice of appeal. However, we believe this factual distinction is one without legal significance. The supreme court stated it is "clear that once a defendant in a criminal matter requests an appeal the duty of filing the notice of appeal is upon the clerk of the trial court." *Id.* at 461. Here, defendant asked the court to file the notice of appeal and the court directed the clerk to do so. It was reasonable for defendant to rely on the court's direction to the clerk as meaning the clerk was directed to file a timely notice of appeal. Therefore, we consider the notice of appeal timely filed. We will now consider the merits of defendant's appeal.

¶ 21　　　　　　　　　　　　II. Affirmative Defense

¶ 22　Defendant first contends that he was not proven guilty of domestic battery beyond a reasonable doubt because the State failed to disprove the affirmative defense of reasonable parental discipline. When taking the evidence in the light most favorable to the State, we find that it was sufficient to find defendant guilty of domestic battery and disprove the affirmative defense.

¶ 23　Section 12-3.2(a)(1) of the Code provides: "A person commits domestic battery if he or she knowingly without legal justification by any means *** [c]auses bodily harm to any family or household member." 720 ILCS 5/12-3.2(a)(1) (West 2014). However, Illinois common law recognizes an affirmative defense to domestic battery of reasonable parental discipline. See *People v. Green*, 2011 IL App (2d) 091123, ¶ 16; Restatement (Second) of Torts § 147(1) (1965) ("A parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his child as he reasonably believes to be necessary for its proper control, training, or education."). Such an affirmative defense, like self-defense, provides a legal justification for an otherwise criminal act in order to balance a parent's right to privacy in raising their children with the State's interest in preventing the mistreatment of children. See *Green*, 2011 IL App (2d) 091123, ¶¶ 14, 16.

¶ 24　When the affirmative defense of reasonable parental discipline is raised, "the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense." See 720 ILCS 5/3-2(b) (West 2014); see also *Green*, 2011 IL App (2d) 091123, ¶ 16. Here, the State had to prove that (1) defendant caused bodily harm to E.S., (2) he did so knowingly and without legal justification, and (3) the discipline exceeded the standards of reasonableness. See *Green*, 2011 IL App (2d) 091123, ¶ 16. Defendant only challenges that the State failed to prove the third component, that the discipline was unreasonable.

¶ 25　In considering whether an act of corporal punishment was reasonable, it is appropriate for the court to consider (1) the degree of physical injury inflicted upon the child, (2) the likelihood of future punishment that may be more injurious, (3) the fact that any injury resulted from the discipline, (4) the psychological effects on the child, and (5) "the circumstances surrounding the 'discipline,' including whether the parent was calmly attempting to discipline the child or whether the parent was lashing out in anger." *In re F.W.*, 261 Ill. App. 3d 894, 903 (1994).

¶ 26     "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Rather, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This means the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Collins*, 106 Ill. 2d at 261.

¶ 27     Here, the evidence, when taken in the light most favorable to the State, showed that E.S., who was six years old, was hit with a belt by defendant for either eating defendant's biscuit or eating the biscuit and blaming it on his brother. E.S. told Evans and Blaser that he had been hit with a belt. The narrative was further corroborated by R.V.'s statements to Olsen and Blaser. R.V. told Olsen that E.S. was hit six or seven times. Evans testified that he saw two red welts on the back of E.S.'s legs that, in his opinion, were the width of a belt. The court found Evans to be very credible. We defer to this credibility finding. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). When considering the facts that E.S. (1) was six years old, (2) was hit with a belt for the trivial transgression of eating a biscuit, (3) was hit six or seven times, and (4) had welts on his legs, we find the evidence was sufficient to disprove the affirmative defense.

¶ 28     We acknowledge that the court did not make express findings of fact regarding the likelihood of more injurious future punishment, the psychological effects of discipline on the child, or whether defendant lashed out in anger or calmly disciplined the child. The court need not expressly consider each factor (*supra* ¶ 25) when determining reasonableness. Initially, we note that each factor may not be applicable in every case. Moreover, simply because the court did not expressly note each factor does not mean it did not consider it. *People v. Phillips*, 392 Ill. App. 3d 243, 265 (2009) ("a trial court is presumed to know the law and apply it properly"). Finally, the factor of the degree of physical injury weighed heavily against any finding of reasonableness in the instant case. Viewing the above facts in totality, we find it was rational for the court to determine that the discipline was unreasonable.

¶ 29                              III. Right to Confront Accuser

¶ 30     Defendant next contends that he "was denied his sixth amendment right to confront his accuser where the complainant testified defendant never hit him but the judge found defendant guilty of domestic battery based on the complainant's hearsay statements." Defendant admits that the issue is forfeited as he did not object to the statements or include the issue in a posttrial motion, but asks us to consider the issue under both prongs of the plain error doctrine. See *People v. Enoch*, 122 Ill. 2d 176 (1988). "The first step in plain-error review is to determine whether an error occurred." *People v. Kitch*, 239 Ill. 2d 452, 462 (2011). Because we find that E.S. was present and able to answer any questions on cross-examination, we find that defendant was not denied his right to confront his accuser, and thus no error occurred.

     "In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the United States Supreme Court held that, under the confrontation clause, testimonial statements of a witness who does not testify at trial are inadmissible unless (1) the witness is 'unavailable' and (2) the defendant had a prior opportunity to cross-examine the witness. When the declarant

appears for cross-examination at trial, however, the confrontation clause 'places no constraints at all on the use of [the] prior testimonial statements.' " *In re Brandon P.*, 2013 IL App (4th) 111022, ¶ 45 (quoting *Crawford*, 541 U.S. at 59 n.9).

Section 115-10 of the Code further allows testimony of out-of-court statements made by a child-victim if the child testifies at the proceeding or is unavailable as a witness and there is corroborative evidence of the act that is the subject of the statements. 725 ILCS 5/115-10(b)(2)(B) (West 2014). "[T]he key inquiry when determining whether a declarant is available for cross-examination is whether the declarant was 'present for cross-examination and answered questions asked of her by defense counsel.' " *Brandon P.*, 2013 IL App (4th) 111022, ¶ 46 (quoting *People v. Bryant*, 391 Ill. App. 3d 1072, 1083 (2009)).

¶ 31    Here, Evans and Blaser testified that E.S. had told them that defendant hit him with a belt for eating a biscuit. E.S. then testified that defendant never hit him. Defendant did not cross-examine E.S. Though E.S. did not testify consistently with his prior statements to Evans and Blaser, he did testify and was available for cross-examination.

> " 'Where a defendant does not attempt to cross-examine a witness on [his or] her out-of-court statements, he cannot complain that the witness was unavailable for cross-examination. [Citation.] A witness who is present for cross-examination and answers questions is available for cross-examination even when defense counsel chooses to let the witness's direct testimony stand. [Citation.] *** "In a situation such as this, defense counsel is placed in a precarious position. In general, during any trial, an attorney does not want to ask a question if he does not know how the witness will answer. Further, an attorney surely does not want to elicit an answer that will implicate his client. However, strategic considerations such as these do not make the witness unavailable for cross-examination." ' " *Id.* ¶ 50 (quoting *People v. Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶ 63, quoting *People v. Lara*, 2011 IL App (4th) 080983-B, ¶ 51).

E.S. was available for cross-examination. The fact that defendant chose not to cross-examine him about his prior statements does not change this fact.

¶ 32    In coming to this conclusion, we reject defendant's reliance on *People v. Learn*, 396 Ill. App. 3d 891 (2009), for the proposition that the minor is required "to actually accuse the defendant of something" when testifying in order for the hearsay statements to be considered. We find *Learn* to be distinguishable from the instant case. In *Learn*, the alleged victim testified, but did not answer questions about the sexual acts the defendant had purportedly performed. *Id.* at 900. Specifically, when asked questions about the abuse, the alleged victim began to cry and never spoke about the abuse. *Id.* at 896-97. Stated another way, the alleged victim in *Learn* neither confirmed nor denied that the defendant had sexually abused her. Therefore, there was no testimony upon which the defendant could cross-examine the alleged victim. Here, E.S. testified at trial that defendant did not hit him with a belt. Thus, defendant had the opportunity to impeach E.S. or inquire why E.S. previously told Evans and Blaser the defendant hit him. Defendant chose not to do so.

¶ 33                                        CONCLUSION

¶ 34    The judgment of the circuit court of Mercer County is affirmed.

¶ 35        Affirmed.